**IN THE UNITED STATES DISTRCT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

ELIZABETH SCHULTE
10815 62nd St N                                     Civil Action No. 3:23-CV-322
Stillwater, MN 55082

                             Plaintiff,

v.

KENNETH J. LENERS
(In his individual capacity, and
Official capacity as the
Town Chairman of the Town of
Cedar Lake)
2825 29 1/4 Ave
Birchwood, WI 54817,

TOWN OF CEDAR LAKE
2696 Main St
Mikana, WI 54857,

and

TOWN OF CEDAR LAKE BOARD OF SUPERVISORS
2696 Main St
Mikana, WI 54857

                             Defendants.

---

### AMENDED VERIFIED COMPLAINT

---

Plaintiff Elizabeth Schulte, by her attorneys Weld Riley, S.C., hereby brings this Amended

Verified Complaint against Kenneth J. Leners, in his individual and official capacity, the Town of

Cedar Lake, and the Town of Cedar Lake Board of Supervisors:

1

**INTRODUCTION**

1.      This is a case about Kenneth J. Leners ("Leners" or "Chairman Leners"), the Town Chairman of the Town of Cedar Lake's Board of Supervisors, abusing his office and his role as the Town Chairman to silence his critics and unlawfully infringe the First Amendment constitutional rights of Elizabeth Schulte, Elizabeth Young, and other people who disagree with Chairman Leners' viewpoint regarding recreational vehicle or camper use on private property and Leners' proposed Town ordinances regulating the same.

2.      In September 2022, Chairman Leners posted a written opinion piece on the Town's official website advocating for recreational vehicle or camper regulation. The opinion piece also engaged in electioneering, attempting to get future Board members elected that would favor Leners' view.

3.      The ability to post comments in response to Chairman Leners' missive was open to all members of the public with no restrictions regarding content or who could comment.

4.      Instead of allowing legitimate criticism and debate on Chairman Leners' viewpoint in a public forum – the interactive comments section on the Town of Cedar Lake's website – Leners shut down, restricted, and deleted or removed comments opposing his viewpoint. Chairman Leners unlawfully restricted protected speech and violated the constitutional rights of Schulte and others holding opposing viewpoints. Chairman Leners engaged in unlawful viewpoint discrimination, which is "an egregious form of content discrimination" and is "presumptively unconstitutional." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829-30 (1995).

5.    Chairman Leners is not subject to qualified immunity. Leners knew or should have known, or recklessly disregarded, that his actions violated Schulte's (and other individuals') clear First Amendment and other constitutional rights.

6.    Accordingly, Schulte seeks declaratory relief that Defendants' actions violated the First and Fourteenth Amendments of the United States Constitution, and injunctive relief which will stop Chairman Leners and the Defendants from engaging in ongoing and future viewpoint discrimination and retaliatory actions, including, but not limited to: assurance Leners and the Defendants will not engage in future constitutional violations of the First and Fourteenth Amendments, a full restoration of the deleted comments to the Town's website attached directly to the Leners' opinion opposing recreational vehicle use, an actual public apology from Leners, and the ability to engage in public comment at future Town meetings as non-residents. Plaintiff also seeks nominal damages, compensatory damages, punitive damages against Leners in his individual capacity, and her attorney fees for the blatant, knowing, and willing violations of Schulte's clearly established constitutional rights.

**PARTIES**

7.    Plaintiff, Elizabeth Schulte ("Schulte"), is an adult resident of Minnesota, with an address of 10815 62nd St N, Stillwater, MN 55082. Schulte co-owns a parcel of real property in the Town of Cedar Lake, Barron County, Wisconsin with no physical address, and which is identified as Barron County Parcel No. 010-4310-71-000 (the "Schulte Property").

8.    Schulte pays property taxes to the Town and has a recreational vehicle on the Property to use during warm-weather, non-winter months, ranging from approximately April through October of each year. Schulte stores the recreational vehicle on the property when not in

active use. Schulte has all required permits to use a recreational vehicle on her Property and uses her Property in compliance with the Barron County Zoning Code.

9. The Schulte Property has an estimated fair market value of $17,400. Leners and the Town's actions restricting Schulte's speech and her ability to advocate against the proposed regulation restricting Schulte's use of the property would damage her in an amount of at least the assessed value of the Schulte Property.

10. Defendant, the Town of Cedar Lake ("Town") is a local government unit and municipality organized and existing under ch. 60, Wis. Stats., and is located in Barron County, Wisconsin. The Town has a mailing address of 2696 Main St., Mikana, Wisconsin 54857.

11. Defendant, the Town of Cedar Lake Board of Supervisors is the Town's governing body and is made up of up to three (3) elected and/or appointed supervisors ("Town Board" or "Board"). The Town Board's address is 2696 Main St., Mikana, Wisconsin 54857.

12. Defendant, Kenneth J. Leners, is an adult resident of Wisconsin and is the elected Chairman of the Town Board. For all times relevant to this Amended Verified Complaint, Leners has been the Chairman of the Town Board. Leners' resides in the Town, at an address of 2825 29 1/4 Ave., Birchwood, Wisconsin 54817. Leners is being sued in both his official capacity as the Chairman of the Town of Cedar Lake and in his individual capacity.

## JURISDICTION AND VENUE

13. Plaintiff originally filed this action in Barron County Circuit Court and Defendants removed the action to federal court, in the Western District of Wisconsin.

14. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Plaintiff's action arises under the First and Fourteenth Amendments to the United States Constitution; and under federal law, particularly the Civil Rights Act of 1871, 42 U.S.C. §§

4

1983 and 1988; and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

15.    This Court has authority to issue the requested declaratory relief pursuant to 28 U.S.C. § 2201 and 2202, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorneys fees and costs under 42 U.S.C. § 1988.

16.    This court has personal jurisdiction over all Defendants because all Defendants reside or their principal offices are located in the Western District of Wisconsin.

17.    Venue in the Western District of Wisconsin is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of Wisconsin and Defendants reside in or principal offices are in the Western District of Wisconsin.

### GENERAL ALLEGATIONS

18.    The Town has an official website, located at https://townofcedarlake.org/ ("Town Website"). Among other things, the Town Website contains Town Board agendas, Town Board meeting minutes, contact and term information about its governmental officials, ordinances and resolutions, a calendar for upcoming Town meetings and actions, and other miscellaneous updates and posts related to Town business.

19.    Prior to September 22, 2022, whenever the Town posted a new announcement, agenda, meeting minutes, or other post originating from the Town onto the Town Website, there was a public comment section at the end of each post.

20.    The public comment section on the Town Website that appeared at the end of each post (collectively the "Comment Section") allowed anyone from the public to express their thoughts or opinions regarding the content of that particular Town-originating post.

21.    The Town enabled this Comment Section. The Town allowed members of the public to write their own comments underneath the post and to carry on discussions with one another, with no limits on the content or who could discuss the matters of those posts.

22.    Upon information and belief, before Leners' actions as further set forth in this Amended Verified Complaint, the Comment Section contained no restrictions or limits on the content of what could be expressed in response to a post originating from the Town on the Town Website. The Town did not enact or have a policy or practice restricting who could comment or the types of comments that could occur in the Comment Section. The Comment Section was open for all who wanted to engage in expressive activity responding to Town posts on the Town Website.

23.    Upon information and belief, before Leners' actions as further set forth in this Amended Verified Complaint, there was also no moderation or other pre-approval process from the Town before a comment was posted and publicly available in the Comment Section on the Town Website. A person, including Plaintiff, could post a comment in the Comment Section and it would appear without any pre-approval or moderation from the Town.

24.    During a Town Board meeting on October 17, 2022, Chairman Leners analogized the situation regarding regulating comments on the Town Website as being "similar" to the situation the Town faced when it thought about establishing or developing a Town Facebook page, which it ultimately did not do. Nonetheless, "similar" to a Facebook post and responsive comments to a post, the Town allowed comments in the Comments Section on the Town Website and there were no restrictions, limits, or prohibitions prior to Leners' actions against Schulte and others, as set forth in this Amended Verified Complaint.

25.     Simply put, by its very nature, the Comment Section on the Town Website was an interactive space designed and dedicated for expressive activities.

26.     In September 2022, Leners made, published, and posted a written post to the Town Website. The post, titled "Update on Recreational Residential Dwellings," was dated September 12, 2022, and was posted on the Town Website on September 13, 2022, (the "Leners Post"). Leners signed the Leners Post as the Chairman of the Town of Cedar Lake. A copy of the Leners Post is attached and incorporated in this Amended Verified Complaint as Exhibit A, which was part of the Notice of Claim filed against the Town and Leners.

27.     The Leners Post is an opinion and advocacy piece he made as the Town Chairman, which speaks for itself and demonstrates his continued viewpoint that dislikes camper use in an attempt to further regulate, restrict, and unlawfully generate revenue through a Town-approved ordinance, all while using Town resources on the Town Website to solicit candidates who will join him in his cause, stating "it would be better to seek candidates for the upcoming April election that are willing to be proactive in resolving this issue."

28.     In addition to there being no restrictions on who could comment in the Comment Section of the Town Website responding to the Leners Post, Leners invited discussion and expressive activity by asking questions such as, "When is enough, enough?"; "Will another 100 or 200 more unlicensed campsites be allowed before action is taken even though homeowners currently pay 94% of all township expenses and unlicensed campsites pay only 6% of all township expenses?"; and "Why are non-residents given priority over residents?"

29.     The public accepted Leners' invitation to engage in responsive dialogue. In response to the Leners Post, multiple individuals commented using the Comment Section on the Leners Post, on the Town Website. (Exhibit A). As of the morning of September 21, 2022, of the

7

seventeen (17) public comments in response to the Leners Post, thirteen (13) posts opposed or questioned Leners and/or his views, two (2) arguably supported Leners' views, and two (2) were Leners engaging in unlawful speech restrictions and viewpoint discrimination stating persons who had opposed his views were restricted from posting again due to comments being "disrespectful."

**SCHULTE POSTS AND LENERS' UNCONSTITUTIONAL RESPONSE**

30.    On September 14, 2022 and September 19, 2022, Schulte posted a series of comments responding to the Leners Post, including responding to an individual who apparently supported the Leners Post. Schulte's September 14, 2022 and September 19, 2022 comments included the following:



**Liz Schulte** on September 14, 2022 at 8:18 am

Chairman Leners,
The fact that you continue to misrepresent the situation in a public forum shows your entitled and manipulative character. I was born and raised in Wisconsin and if one thing is clear we believe in property rights for ALL property owners. My husband's family bought and has been using their property in the Loch Lomond area since 1972. I have been coming to the area long

before you knew it existed. Yup we do not pay as much in taxes, but we do not live in our campers on our land and at most only get to enjoy our land 20% of the year, and that percentage is generous. Land owner's who use their property for recreational purposes are under more rules and regulations than any campground and don't get to make back what we pay yearly in profits as campgrounds do. We have to get sanitation permits and permits to have our campers on our own property yearly from multiple institutions. Our holding tanks, which are required as of 2022, are pumped and maintained more than any regular septic systems. If there was an issue with sanitation the pumper/haulers would have made the issue known. You continue to inflate numbers. Many of us own mulitple lots and only have a single camper on 1 of them. You and your friends bought in to this area knowing the zoning and now you want to change it... not because there is a sanitation issue but because you don't want to see happy families camping and enjoying the use of their land. You talk about zoning violations... however these have been proven to be nothing more than complaints by your friends. I would like to see your proof that those unfounded complaints were more than just harrassment. You continue to lie and misrepresent the situation to manipulate others. I know that the residents of Cedar Lake who were raised and continue to live there see that you are only interested in pushing this agenda for a few entitled and greedy individuals.
Liz Schulte

8

 **Thomas Lee** on September 15, 2022 at 8:11 pm

What is moderation?

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings
/?replytocom=2216#respond)

 **Liz Schulte** on September 19, 2022 at 8:00 pm

You bought in to the area knowing how it was zoned. The developers had it zoned that way from day 1. If you don't like it leave!

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings
/?replytocom=2222#respond)

31. Beginning on September 20, 2022, Leners engaged in a series of unlawful speech restrictions against Schulte and others, attempting to restrict protected speech by calling comments "disrespectful," and eventually deleting posts that contained a different viewpoint from his regarding camper/recreational vehicle use.

32. In response to those September 14, 2022 and September 19, 2022 comments from Schulte, on September 20, 2022 at 8:31 a.m., Leners posted the following message restricting Schulte's speech on the Town Website ("Leners' Schulte Restriction"):

 **ken** on September 20, 2022 at 8:31 am

Liz Schulte – Your disrespectful comments will not be tolerated. I will no longer allow you to comment on this site.

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings
/?replytocom=2223#respond)

9

33.     At 11:36 a.m. on September 21, 2022, Schulte posted another message questioning the "disrespectful" characterization and opposing the Leners Post, which reads as follows ("Schulte's September 21 Post"):



**Liz Schulte** on September 21, 2022 at 11:36 am

Chairman Leners,

Disrespectful? The Town needs to stop trying to regulate camper use out of existence. Increased zoning violations and irreversible damage to Red Cedar Lake? What you say in your letter is wrong and "fake news". Stop targeting legal land use. Liz Schulte

34.     By 3:01 p.m. on September 21, 2022, Leners deleted Schulte's September 21 Post. (See Exhibit A). Leners' deletion of Schulte's September 21 Post is an action, which by itself, is blatantly unconstitutional, constitutes unlawful viewpoint discrimination, and violates Schulte's constitutional rights.

**OTHER POSTS OPPOSING LENERS' VIEWS AND LENERS' UNCONSTITUTIONAL RESPONSES**

35.     On September 19, 2022, a Liz Young ("Young") posted a comment responding to the Leners Post, which is shown below:

10



**Liz Young** on September 19, 2022 at 8:46 am

Mr. Lee,   ∧

I suggest you look into the characterizations on "campground" in the eyes of the state and the county before you come to the conclusion that you "live" in one. The properties within LLBC are privately owned, Residential-Recreational lots and are categorized, zoned, permitted and taxed as such. They are NOT campgrounds, and the owners of those lots should be given the same rights as every other LAND OWNER in the township – a "luxury" they are currently NOT afforded as many are not allowed to vote or have a say in any of this (taxation without representation?), are required to pay additional fees and have separate permitting for their every move. The notion that you, and others, like Chairman Leners, think that a classification of individuals deserves less than you speaks to your complete lack of empathy and shows the dictator-like arrogance by which the township is currently governed, The citizens of the area are far better than that. Do better, Sir.

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings
/?replytocom=2220#respond)

36.     Beginning on September 20, 2022, Leners engaged in a series of unlawful speech restrictions against Young and others, attempting to restrict protected speech by calling comments "disrespectful," and eventually deleting posts that contained a different viewpoint from his regarding camper/recreational vehicle use.

37.     On September 20, 2022 at 9:13 a.m., in response to Young's Post, and ironically, after Young commented Leners was acting with "dictator-like arrogance," questioning how he governs the Town, Leners posted the following message restricting Young's speech on the Town Website (hereafter "Leners' Young Restriction"):



**Ken Leners** on September 20, 2022 at 9:13 am

Liz Young – Your disrespectful comments will not be tolerated. I will no longer allow you to comment on this site.

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings
/?replytocom=2224#respond)

11

38.     On September 20, 2022, in response to Leners' Young Restriction, an individual by the name of Phil Johnson made a comment questioning Leners' Young Restriction, stating an opinion and viewpoint which was different than Leners' (the "Johnson Post"). The Johnson Post commented on the importance of free speech, noting "Free speech is free speech, even if you do not agree and even if you feel someone doesn't like your opinion."  The Johnson Post is below:



**Phil Johnson** on September 20, 2022 at 4:53 pm

Ken, I believe you are confusing disrespect with dialogue. Just because your opinion is not accepted as truth, does not constitute banning of dialogue.

Liz does not agree with your stance. Others do not agree with your stance. I have not stated my stance. Who decides who is allowed to weigh in and what is the your requirements for what is deemed acceptable vs banned from commenting?

I am not a full time resident. But am taking note as I am purchasing a second home in Birchwood. My family and I are doing our best to buy in to the culture and community. That said, if dialogue is not allowed because you can't agree on something, it has me questioning the current leadership in the area. Free speech is free speech, even if you do not agree and even if you feel someone doesn't like your opinion.

Set rules and regulations but allow all dialog of the community. If something was violated to constitute banning of comments, please elaborate. Your feeling a of disrespect do not constitute banning of comments. This is not a school and you're not the principal.

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings/?replytocom=2226#respond)

39.     On September 21, 2022 at 11:21 a.m., Young posted a comment, asking Leners the following (hereafter "Young's September 21 Post"):



**Liz Young** on September 21, 2022 at 11:21 am

Mr. Leners, please explain how my difference of opinion equates to disrespect.

Reply (https://townofcedarlake.org/update-on-recreational-residential-dwellings/?replytocom=2232#respond)

40.     By 3:01 p.m. on September 21, 2022, Leners deleted Young's September 21 Post. (See Exhibit A). Leners' deletion of that post is an action, which by itself, is blatantly unconstitutional, constitutes unlawful viewpoint discrimination, and violates Young's constitutional rights.

41.     By 3:01 p.m. on September 21, 2022, Johnson's comments, such as "Free speech is free speech, even if you do not agree and even if you feel someone doesn't like your opinion" and "Your feeling a [sic] of disrespect do not constitute banning of comments. This is not a school and you're not the principal" were a bridge too far for Leners, and Leners deleted the Johnson Post (See Exhibit A). Leners deleted speech expressing the need for free speech and calling for the exchange of ideas. Leners' deletion of the Johnson Post is especially incredible since it deleted a viewpoint related to free speech involving Leners' views, was blatantly unconstitutional, and is an action, which by itself, constitutes unlawful viewpoint discrimination.

**LENERS' ADDITIONAL UNLAWFUL ACTIONS**

42.     On September 21, 2022, at approximately 4:24 p.m., Schulte's legal counsel sent Leners and other Town Supervisors on the Town Board an email and letter (hereafter "Helquist

Letter") regarding Leners' unconstitutional actions under the First Amendment and requested certain relief for Schulte. (Exhibit A).

43. The Helquist Letter notified Leners and the Defendants that the Town Website was a public forum that entitled comments to First Amendment protections, and that both the threatened restriction and actual removal of Schulte's and others' comments was "counter to the requirements of the First Amendment and was impermissible viewpoint discrimination." (Exhibit A). The Helquist Letter was sent "as a courtesy in an attempt to obtain voluntary compliance from you and the Town" and also requested Leners provide the letter to the Town's legal counsel. (Exhibit A)

44. In response to the Helquist Letter, Leners quickly doubled-down on his retaliatory actions against so-called "disrespectful" comments, and Leners continued his unlawful viewpoint discrimination. Approximately fifteen (15) hours after receiving the Helquist Letter, Leners sent an email to Helquist, Schulte, and the other Town Supervisors of the Town Board on September 22, 2022 at 7:23 a.m., claiming, in relevant part, that he was going to disable comments "due to your clients' inability to withhold their disrespectful comments." (Exhibit A) (emphasis added). By Leners' own words, Leners then took additional unlawful action to punish speech solely "due to" protected speech Leners deemed "disrespectful."

45. But Leners did not start by disabling comments. In an action following-up on his email stating his forthcoming actions were solely motivated "due to your clients' inability to withhold their disrespectful comments," Leners deleted all remaining comments on his Leners Post by 8:06 a.m. on September 22, 2022 (see Exhibit A).

46. Leners' deletion of all comments on the Leners Post was not viewpoint neutral, targeted a disfavored viewpoint, is unconstitutional, and violates the First Amendment. In total, thirteen (13) of the fifteen (15) comments related to the substance of the Leners Post – 86% – were

opposed to or provided a perspective different from Leners' view regarding recreational vehicles or free speech.  This also included deletion of Schulte, Young, and Johnson's so-called "disrespectful" comments.  His deletion of those comments also included a comment by "Ann" at 10:06 p.m. on September 20, 2022, which stated in relevant part: "It is time citizens and elected officials stand up to your bully behavior and elect an official that will work for the people of the Town of Cedar Lake and their best interest." Leners' response to that post was to unconstitutionally delete it. (Exhibit A)

47.    As of the date of this Amended Verified Complaint, over eight (8) months later, the Leners Post remains available on the Town Website, which is still available for public viewing at https://townofcedarlake.org/update-on-recreational-residential-dwellings/, supporting increased camper regulation, after Leners deleted all views opposing his – 86% of comments – in that public forum. Schulte and others' injuries are ongoing.

**LENERS' CONTROL OVER WEBSITE**

48.    At all times relevant to this dispute, Leners has the authority over, controls, and/or directs others regarding the content on the Town Website, including who can or cannot comment on posts, or whether posting of comments will be allowed on the Town Website.

49.    At all times relevant thereto, Leners was the individual who controlled or directed others to limit or delete the posts, comments, and content on the Town Website and Leners was acting under color of state law.

50.    On October 4, 2023, Schulte filed a Notice of Circumstances Giving Rise to Claim and Claim Pursuant to Wis. Stat. § 893.80 against Leners and the Town, which was subsequently served on Leners and the Town ("Notice of Claim") (See Exhibit A, which is fully attached and incorporated herein).

15

51.     After being served a Notice of Claim from Schulte, Leners admitted he conducted the actions which resulted in the alleged constitutional violations.

52.     At the October 17, 2022 Town Board meeting, a then, but now-former Town Board supervisor – Tony Wolff – said he wished it had been handled differently before Leners "pull[ed] the comments" from the Town Website.

53.     Leners responded to that Town Board supervisor's statement and admitted Leners was the one responsible for taking down the comments, while doubling down that his reason for such action was due to the nature, i.e., the viewpoint, of the comments. Leners responded, in part: "Based on what I perceived to be as derogatory comment [sic], I wasn't going to call a special meeting for it. . . . So I made a judgment call, which we'll talk about in closed session later tonight, um, so that's what I did." Rather than rely on the flimsy, unconstitutional "disrespectful" reason for restricting or deleting comments with a different viewpoint, Leners created an equally unconstitutional excuse that the comments were "derogatory."

54.     At the October 17, 2022 Town Board meeting, the Town of Cedar Lake Board of Supervisors, acting on behalf of the Town of Cedar Lake, briefly discussed comments on the Town Website and took no action to require restoration of the comments Leners deleted and/or removed in response to the Leners Post. As further set forth below, by taking no action to reverse Leners' actions, the Town of Cedar Lake Board of Supervisors both acquiesced to Leners' actions and or affirmed Leners was the final policymaker when it came to the deletion or removal of the comments from the Leners Post on the Town Website.

55.     On April 17, 2023, Leners emailed so-called "apology" letters to Schulte and Young's attorney, addressed to Schulte and Young individually. (Exhibit B) ("April 17 Letters"). The April 17 Letters were sent on behalf of the "Town of Cedar Lake," as the "Town of Cedar

Lake" and address is prominently displayed at the top of the letters and were signed by Leners as the Town Chairman. Leners admitted to wrongdoing in the April 17 Letters, which stated the "removal of your post to the 'Update on Recreational Residential Dwellings' and the statement that you would not be able to post on the website at that time was erroneous." (Exhibit B).

56.    Leners' April 17 Letters claimed to be an "apology," but the letters were non-apology apologies, and were an after-the-fact attempt by Leners to excuse his blatantly unconstitutional conduct in an attempt to avoid individual liability. Per the Town's April 10, 2023 meeting minutes, the letter was "a letter proposed by the attorney to respond to a claim" and were drafted by the Town's attorney to respond to the claims.

57.    In the April 17 Letters, Leners also claimed to have restored the deleted comments from Schulte and others to the Town Website, but the comments are in a standalone, disjointed, not readily decipherable post, which are unconnected to or not otherwise shown to be comments in response to the Leners Post. Meanwhile, the Leners Post remains, with no comments shown in response to it.

58.    The April 17 Letters make empty commitments to the First Amendment, asking Schulte and Young to be "assured that the Town Board will endeavor to ensure that Board members and Town staff receive continuing training on online speech and First Amendment rights as that doctrine continues to evolve." (Exhibit B). As alleged in Counts III and IV, below, based on the additional restrictions imposed against speakers at the Town's public comment period on April 22, 2023, after the April 17 Letters were sent, that "assurance" to follow the First Amendment is empty and further justifies the need to impose punitive damages against Chairman Leners to truly "assure" he follows the First Amendment.

17

**LENERS' ADDITIONAL ANIMUS AGAINST CAMPERS**

59.     Leners' animus against non-resident property owners and other individuals, including Schulte and Young, for opposing his views attempting to regulate camping units, and/or for using their property for recreational vehicles and other similar camping uses is long-standing and public.

60.     During a Town Board meeting on September 13, 2021, Leners called Schulte's and other property owners legal land use "a damn camper city" and RVs a "damn camper."

61.     During that same September 13, 2021 meeting, when questioned by a Town Supervisor whether a fee would deter camper/RV owners from buying lots in the Town, Leners stated, "It may if the fee is high enough. We should not be encouraging the continued cheapest campground around, and that's what we're doing. This is the cheapest campground around. . . ."

62.     During that same September 13, 2021 meeting, in response to a suggestion from a Town Supervisor that regulations be applied equally across all uses, Leners stated campers were a "higher priority problem."

63.     Leners delayed responses to public records requests under Wisconsin's Public Records Law related to camper regulation, when he stated that responding to the request and providing records was a "low priority." Leners inordinately delayed other records request responses related to camper/recreational records requested by Schulte.

64.     In response to records requests, and delays in providing responsive records, Leners targeted Schulte during a public Town meeting on January 10, 2022, apparently trying to intimidate, harass, or silence her regarding her request for public records regarding camper regulations in the Town. As summarized in the January 10, 2022 meeting minutes, Leners stated to the public: "[Schulte's attorney's] actions appear to be frivolous and a waste of taxpayer dollars

18

in legal fees. Ken stated that Masters and Schulte are responsible for [the attorney's] actions, and any questions related to this topic should be referred to them."

65. At a special Town meeting on August 24, 2021, after Schulte's attorney made a side comment to Schulte near the front row that the camper regulation Leners was proposing was unlawful, Leners made a statement directed to Schulte and her attorney that legal counsel could not talk to her.

66. In response to being served notices of claims from Schulte and Young regarding his First Amendment violations, Leners threatened further retaliatory action in response to Schulte's protected speech. At the Town's November 14, 2022 meeting, after Leners called the claim "shit," Leners, in an attempt to bully and intimidate Schulte and others against seeking vindication of their First Amendment rights through a § 1983 claim and or for simply asserting their rights under the First Amendment to begin with, Leners threatened, "I wouldn't want to be in their shoes. There will be a counter lawsuit. And I wouldn't want to be in their shoes."

**COUNT I**
**Violation of First Amendment (Damages) Freedom of Speech**
**42 U.S.C. § 1983**
**(Against Kenneth Leners in his individual and official capacity)**

67. Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

68. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

69. The First Amendment prohibits government officials from regulating expression based on the views expressed, a concept known as "viewpoint discrimination."

19

70.     Leners engaged in constitutionally impermissible viewpoint discrimination against Schulte, Young, and others by using his official status as the Town Chairman of the Town of Cedar Lake to shut down, delete, and suppress the speech from Schulte and others in the Comment Section on the Town Website that opposed his viewpoint regarding recreational vehicle use and criticized his performance as the Town Chairman.

71.     The Town Website, and specifically the Leners Post and comments on the Leners Post, constituted a "public forum." Leners and the Town created a public forum, first deleted views opposing or questioning the viewpoint in the Leners Post, then deleted all comments related to the Leners Post. Leners' deletion of some, and then all comments on the Leners Post, was not viewpoint neutral. In total, thirteen (13) of the fifteen (15) comments related to the substance of the Leners Post – 86% – were opposed to or provided a perspective different from Leners' view regarding campgrounds, free speech, or Town governance with him as the elected Chairman.

72.     The denial of constitutional rights is an irreparable injury per se. Elrod v. Burns, 427 U.S. 347, 373 (1976). The mere act of Leners deleting the aforementioned comments constitutes irreparable injury per se. The inability to now comment on the Leners Post, especially since the Leners Post remains as the only allowed viewpoint (not considering the so-called restoration of the deleted comments on a separate page that is disjointed from the Leners Post and essentially indecipherable), constitutes an ongoing irreparable injury.  Other than proceeding with this action, Schulte and others have no other adequate legal, administrative, or other remedy by which to prevent or minimize the former and continuing irreparable harm to her First Amendment rights.

73.     By deleting comments criticizing or questioning his leadership and qualifications to be the Chairman, Leners suppressed protected speech in the months leading up to his re-election

as the Town Chairman on April 4, 2023, where the Leners Post remained with no responsive comments below it.

74.    Leners and the Town cannot suppress speech in a public forum because of the viewpoint that the speech expresses. See Rosenberger, 515 U.S. 819 (1995); Widmar v. Vincent, 454 U.S. 263 (1981).

75.    Viewpoint discrimination doesn't target subject matter, but the particular views taken by speakers on a subject. It is clearly established under the First Amendment that "[v]iewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger, 515 U.S. at 829. Such viewpoint discrimination is "presumptively unconstitutional." Id. at 830. See Iancu v. Brunetti, 139 S. Ct. 2294, 2299 (2019).

76.    "[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." Lamb's Chapel v. Center Moriches Union Free School Dist., 508 U.S. 384, 394 (1993). A government restriction on speech violates the First Amendment if it favors some viewpoints and discriminates against others, including those messages that the government deems offensive. Matal v. Tam, 137 S. Ct. 1744, 1750 and 1766 (2017) (plurality) ("immoral or scandalous" limit on trademarks also unlawfully discriminates on the basis of viewpoint).

77.    In addition to Leners' previous excuse for deletion – claiming the comments were "disrespectful" – at the October 17, 2022 Town Board meeting, Leners claimed he removed the website comments because they were "what I perceived to be as a derogatory comment." But restricting speech because it is "derogatory" is blatantly unconstitutional and "thus violate[s] the

21

'bedrock First Amendment principle' that the government cannot discriminate against 'ideas that offend.'" Iancu, 139 S. Ct. at 2299 (quoting Matal, 137 S. Ct. at 1751) (emphasis added).

78.    "[T]he public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." Matal, 137 S. Ct. at 1763 (citations and quotations omitted).  "[O]ffensive speech is, itself, a viewpoint and . . . the government engages in viewpoint discrimination when it suppresses speech on the ground that the speech offends." American Freedom Def. Initiative v. King Cnty., 904 F.3d 1126, 1131 (9th Cir. 2018).

79.    The government also cannot prohibit speech on the basis that it violates notions of decency or propriety. Papish v. Bd. of Curators of Univ. Of Mo., 410 U.S. 667, 670 (1973) ("the mere dissemination of ideas – no matter how offensive to good taste – on a state university campus may not be shut off in the name alone of 'conventions of decency.'")

80.    In a public forum, it is clearly established speech restrictions must also be, at minimum, reasonable and viewpoint neutral. See Minn. Voters Alliance v. Mansky, 138 S. Ct. 1876, 1885 (2018). The government "must be able to articulate some sensible basis for distinguishing what may come in from what must stay out," id. at 1888, and must be "capable of reasoned application." Id. at 1892. Restricting speech and then deleting speech due to it allegedly being "disrespectful" or "derogatory" is not reasonable, not facially viewpoint neutral, and is facially unconstitutional as applied by Leners.

81.    Regardless of the classification of the public forum, viewpoint discrimination is prohibited in all forums. See Davison v. Randall, 912 F.3d 666, 687 (4th Cir. 2019) (public official banning access to official Facebook page because posts were viewed as "slanderous" was unlawful viewpoint discrimination and subjected the public official to individual liability and no protection via qualified immunity).

22

82.     Penalties for speech protected under the First Amendment are forbidden. Surita v. Hyde, 665 F.3d 860, 871 (7th Cir. 2011) (Mayor using person's prior speech, which was deemed by the Mayor as "threatening," to prohibit subsequent protected speech by the same person constituted unlawful viewpoint discrimination and the Mayor prohibiting speech did not have qualified immunity and was individually liable).

83.     Leners' deletion of Schulte's September 21 Posts, Young's September 21 Post, the Johnson Post (expressing the need for free speech, of all things) and other comments on the Town Website opposing his viewpoints, specifically targeted and was tailored to eliminate speech critical of Leners' viewpoint and proposed government action to further regulate camper use and his effectiveness or qualifications to be the Chairman.

84.     This type of viewpoint discrimination is especially egregious surrounding discussions of public issues in a public forum, such as the Town Website.  Discussion of public issues and debating the qualification of public officials are integral to the operation of government and "[t]he First Amendment affords the broadest protection to such political expression in order to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people."  McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995) (Person "handing out leaflets in the advocacy of a politically controversial viewpoint—is the essence of First Amendment expression"). Prohibitions against "disrespectful" speech are facially viewpoint discriminatory and are also necessarily viewpoint discriminatory as applied to Schulte and other individuals on the Town Website. Classifying certain disfavored comments as "disrespectful" or "derogatory" was pretext to target and delete a disfavored view by Leners.

85.     It is clearly established that criticizing government officials "is at the very center of the constitutionally protected area of free discussion." Rosenblatt v. Baer, 383 U.S. 75, 85 (1966).

86.     It is clearly established that government actors may not discriminate against speech based on the viewpoint expressed. Rosenberger, 515 U.S. at 828.

87.     Leners' April 17, 2023 after-the-fact attempt to excuse his conduct and claim ignorance based on the so-called "fluid and dynamic state of the law as it relates to online discourse" is meritless and is a poor post-hoc attempt to excuse his blatantly unconstitutional actions, including clear prohibitions on viewpoint discrimination (Exhibit B).

88.     The First Amendment constitutional rights of Schulte and others were clearly established at the time of Leners' unconstitutional actions.

89.     Using governmental authority to suppress the public's criticism of a governmental official, such as Leners, but then Leners using the power of government to restrict opposing viewpoints while leaving his view as the only permissible one on the Town Website for over eight (8) months is an obvious constitutional violation.

90.     At all times relevant, Leners was or should have been aware that his actions were unconstitutional.

91.     Leners' conduct towards Schulte and others recklessly and callously disregarded and was indifferent to Schulte and others' rights because Leners acted with the intent to suppress and silence Schulte and others' criticisms of him or his preferred viewpoint of camper/recreational vehicles and his unlawful activities were not for any legitimate policy purpose.

92.     Leners and the Defendants were warned about their unconstitutional actions, but they ignored the warning. The Helquist Letter notified Leners and the Defendants about the

constitutional issues with his actions and requested Leners forward the letter to the Town's legal counsel. Instead, Leners responded by deleting all comments, 86% of which opposed his viewpoint. Schulte's Notice of Claim also put Defendants on notice and provided an opportunity to remedy the wrong, but Defendants did not correct the violations.

93. Leners shows he does not take the constitutional violations seriously. Based on comments made by Leners at the October 17, 2022 Town Board meeting, during a discussion regarding previous times the Town has been subject to lawsuits, Leners briefly mentioned the serious nature of the previous two times the Town was sued.

94. Leners then attempted to minimize the nature of the constitutional claims in Schulte's Notice of Claim, flippantly and dismissively saying, "and now we've got someone who is talking about, 'I'm offended because of my, my right to First Amendment.'" Leners' insistence this is a claim because someone is "offended" shows he is not taking the constitutional rights of the public seriously and is dismissive toward those rights.

95. Leners restricting and deleting a viewpoint that the "First Amendment affords the broadest protection" to, McIntyre, 514 U.S. at 346, is not simply an action that one finds merely "offensive," but is "[v]iewpoint discrimination [which] is . . . an egregious form of content discrimination" and is "presumptively unconstitutional." Rosenberger, 515 U.S. at 829-30.

96. The allegations in Count III, below, further show Leners has no respect for clear First Amendment rights and deterrence of continued unconstitutional actions from Leners is required.

97. Accordingly, punitive damages are appropriate and necessary against Leners for violating Schulte and others' constitutional rights and to deter similar violations in the future.

98.     Punitive damages against Leners in his individual capacity are further justified in this matter based on the egregious nature of the violation, his expressed animosity toward a disfavored viewpoint, the need to ensure deterrence of future unlawful conduct, Leners' apparent assets, and other bases under the law.

99.     Leners has sufficient assets and is capable of paying any punitive damages awarded by this court. "[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270 (1981). Further, "[b]y allowing juries and courts to assess punitive damages in appropriate circumstances against the offending official, based on his personal financial resources, [Section 1983] directly advances the public's interest in preventing repeated constitutional deprivations." Id. at 269.

100.     Based on Leners' apparent assets, which include, but are not limited to, a lake home assessed at $367,500, a red Porsche 911, a parcel of land valued at $30,800, a Harley Davidson motorcycle, a UTV, snowmobile, pontoon, his financial ability to take multiple trips across and around the United States and Mexico, and other assets to be determined during discovery, the punitive damages needed to deter his conduct must be meaningful and more than a "slap on the wrist." A punitive damages award is required to ensure Leners' unlawful activity is deterred.

**COUNT II**
**Violation of First Amendment (Damages – Municipal Liability under Monell) Freedom of Speech**
**42 U.S.C. § 1983**
**(Against Defendants Town of Cedar Lake and Town of Cedar Lake Board of Supervisors)**

101.     Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

102.    Pursuant to state statutes, Leners was the Town Chairman of the Town of Cedar Lake at all times relevant to this action.

103.    As the chairman and supervisor on the Town of Cedar Lake Board of Supervisors, Leners is a policymaker and lawmaker for the Town. The other supervisors who sit on the Town of Cedar Lake Board of Supervisors are also policymakers and lawmakers for the Town.

104.    As the Town Chairman, Leners has the authority to act on behalf of the Town Board to "see that peace and order are maintained in the Town." Wis. Stat. § 60.24(1)(e)2.

105.    For the reasons stated in Count I, Leners engaged in actions as the Town Chairman which violated Schulte and others' constitutional rights. Before Leners' actions restricting and deleting comments responding to the Leners Post, there was no policy, practice, custom, or other limit on the right of individuals to comment on the Leners Post or other posts to the Town Website, i.e., the Comment Section.

106.    In response to Schulte's and others' comments, on behalf of the Town, Leners created and implemented a policy that restricted and deleted speech on the Town Website due to such speech allegedly being "disrespectful" or "derogatory." On September 22, 2022, Leners eventually deleted all comments  "due to your clients' inability to withhold their disrespectful comments."

107.    On or around October 6 and October 7, 2022 and prior to the October 17, 2022 Town Board meeting, Leners and the Town were served with Schulte's Notice of Claim, which placed Defendants on notice regarding Leners' actions deleting and restricting Schulte's and other persons' protected speech from the Town Website. (Notice of Claim attached as Exhibit A and incorporated herein.)

27

108. During the October 17, 2022 Town Board meeting, in addition to confirming that he deleted the speech, Leners stated a new reason for deleting the comments – being "derogatory." Leners also attempted to justify his actions restricting and deleting the comments from the Comment Section to his post, stating in relevant part, "I didn't want to see the activities get worse."

109. After minimal discussion from the Town Board regarding comments on the Town Website and not taking formal action to reverse Leners' deletion and prohibition of comments moving forward, Leners asserted, "Alright, so I think it's a done deal. We're not going to do a motion, we're just going to move on." The deleted comments from Schulte and others remained deleted and Leners' decision to delete the comments in the Comment Section on the Leners Post, due to them being "disrespectful" or "derogatory" remained the Town's final decision.

110. After the Town Board had knowledge of Leners' actions and after being given an opportunity to correct those actions, the Town Board failed to do so. The Town Board of Supervisors did not constrain or otherwise limit Leners' actions restricting and deleting speech on the Town Website for "disrespectful" or "derogatory" reasons. Leners was the final decisionmaking authority and policymaker regarding the deletion of the comments from the Leners Post and public comments on the Town Website moving forward.

111. Months after the October 17, 2022 meeting, on March 31, 2023, then-Town Supervisor Tony Wolff posted, in relevant part, on his "Re-Elect Tony Wolff for Town Supervisor" Facebook page that "If you posted comments on our website that the Chairman disagreed with, you would be instructed to remove your post because he thought you were disrespectful. And, when you didn't comply, he would remove all comments from the website after they were public."

112.    On April 2, 2023, Ken Leners posted a responsive comment to Wolff's March 31 Facebook post, claiming Wolff's comment "clearly needs clarification." On April 2, 2023, Leners responded, in relevant part that, "There is a fine line between freedom of speech and incitement of violence. I did stop disrespectful comments on our web page because the non-resident, non-elector individuals making the comments are well known in our community for bullying and threatening homeowners. The unanimous town board vote to permanently end comments on our web page confirmed that I did the correct thing." Later in his comment, in furtherance of Leners' assertion regarding his authority and actions, Leners said, "I have been performing my duties as Chairman to work towards solving the 300+ site unlicensed, unregulated campground problem that exists in our township before it becomes a 500+ site unlicensed, unregulated campground." The Ken Leners who posted the reply comment is the Defendant, Kenneth J. Leners.

113.    There was no "incitement of violence," bullying, or threatening by Schulte on the Comment Section to the Leners Post. Upon information and belief, there was no "incitement of violence," bullying, or threatening by others on the Comment Section to the Leners Post on the Town Website. The person who bullied, threatened, and engaged in unlawful actions is Leners when he threatened to restrict and then deleted comments opposing his viewpoint.

114.    Leners restricted and deleted the posts in the Comment Section of his post and Leners' actions were the moving force behind or were the cause of Schulte and others' constitutional injuries.

115.    Upon information and belief, Leners believed his actions restricting and deleting comments was made under this authority as the Town Chairman to maintain order and peace in the Town under Wis. Stat. § 60.24(1)(e)2.

116.    Leners had final authority to establish the Town's policy with respect to the actions he took restricting and deleting Schulte's and others' speech responding to the Leners Post. Leners had final policymaking authority related to his actions as set forth in this Amended Verified Complaint, and Leners' unconstitutional actions were acquiesced to, upheld, and were affirmed through knowing, deliberate, continued inaction by the Town Board of Supervisors at their meeting on October 17, 2022. Leners was not required to change or reverse his deletion or removal of the comments from the Town Website at that October 17, 2022 meeting.

117.    By October 17, 2022, the deletions had occurred and remained for almost 30 days by that point. The Town Board was notified of the constitutional issues through the September 22, 2022 Helquist Letter and Schulte's Notice of Claim that was served on the Town in early October. The restrictions and deletions of Schulte's and others' speech responding to the Leners Post continued for over eight (8) months beginning in September 2022, as the Leners Post, meanwhile, was allowed to remain on the Town Website, with no comments directly opposing his view from Schulte or others through the election season.

118.    All told, Leners' attempted restrictions (2 comments from Leners attempting to restrict or chill future speech for it being "disrespectful") and deletions (13 comments opposing his viewpoint due to his assertion the speech was "disrespectful" or "derogatory") totaled no less than 15 separate unconstitutional acts that started on September 20 and continue to the present.

119.    Leners' restriction and deletion of Schulte's and others' comments critical of Leners viewpoint regarding camper regulation constituted the Town's official policy, custom, practice, or decision.

**COUNT III**
**Public Comment Policy Violates First Amendment's Freedom of Speech and Right to Petition Protections**
**42 U.S.C. § 1983**
**(Against Kenneth Leners in his individual and official capacity and all Defendants)**

120.    Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

121.    The Town of Cedar Lake's meetings allow the public to comment and directly address their elected Town Supervisors and other members of the public regarding issues that come before the Town. This agenda item is called or referred to as "public input" or "public comment" (hereafter "public comment").

122.    The public comment period at the Town Board meetings and other meetings of the Town, such as the annual Town meeting, are a public forum for individuals to speak and address their local elected officials and others attending the meetings. See Surita, 665 F.3d at 868 (7th Cir. 2011). The public comment period during these meetings, including Town annual meetings, is not part of the deliberative legislative portion of meetings where motions are made, seconded, and voting occurs on those motions by the legislative body.

123.    As part of Town's justification to apparently no longer allow any comments on the Town Website on October 17, 2022, the availability of the public comment period was mentioned as an alternative basis to voice issues to elected officials instead of using the Town Website to post comments.

124.    Before April 10, 2023, the public comment period was open for all individuals to speak, regardless of whether they reside in the Town or outside of it.

125.    Annual Town Meetings are public meetings and are open for any member of the public to attend, whether or not one is a resident or non-resident of the Town. Schulte previously

attended the Town meeting in 2022. There are no requirements that attendees at the Town meeting be resident electors of the Town in order to attend.

126.    In the Town Annual Meeting notice posted to the Town Website on April 5, 2023, there was no designated public comment period on the Town Meeting agenda, but the Town's agenda included an item which provided for, "discussions regarding any subjects brought up from the attendees." There was no limit on discussions being limited to resident electors or that attendees could only be resident electors in the Town.

127.    Upon information and belief, despite the lack of an agenda item, during the Town's annual meeting on April 22, 2023, there was still a standalone public comment or public input period.

128.    After Plaintiff, a non-resident of the Town, filed her Notice of Claim, and at the April 10, 2023 Town Board meeting, upon information and belief, the Town Chairman stated that only residents that can vote in the Town are now allowed to speak during the public comment period at the annual Town meeting ("Public Comment Prohibition").

129.    During the April 10, 2023 Town Board meeting, the Town's meeting minutes reflect Leners stated non-residents would not be allowed to speak at the Town annual meeting and that he would unilaterally impose that requirement. The April 10, 2023 meeting minutes, provided in relevant part, that "Ken has allowed a certain number of privileges that had to be revoked due to abuse, such as disallowing non-residents to speak during the annual town meeting of electors, which he will do again in 2 weeks." Leners' dictate and restriction created a new policy limiting speech to residents only, which Leners enforced.

130.    As a result, non-residents were not allowed to speak in that public forum to address their local elected officials and decisiomakers at the Town's annual meeting, at minimum.

131.    That policy espoused by Leners on April 10 was implemented and enforced at the Town meeting. What Leners said on April 10 about restricting comments to residents became "law" at the Town meeting. During the April 22, 2023 Town annual meeting, prior to the public comment period, Chairman Leners, who chaired and presided over the Town annual meeting, directed attendees to, "Use the podium, state your name, your address, and confirm that you are a, that you are a resident." Leners implemented and enforced the policy which prohibited non-residents, such as Schulte, from addressing the Town Board and other members of the public in a public forum at a public meeting, the agenda of which said "attendees" could bring up and discuss other issues. Upon information and belief, as the result of Leners' "non-resident" speaking restriction, no non-residents of the Town spoke during the public comment period of the April 22, 2023 Town's annual meeting.

132.    At a prior Town annual meeting in 2022, non-residents spoke regarding camper or recreational vehicle issues in the Town. In 2022, discussion regarding an ordinance governing recreational residential dwellings (i.e., recreational vehicles) was on the Town annual meeting agenda and there were no restrictions on the ability of non-residents to address those issues or speak during the Town's annual meeting.

133.    At the May 8, 2023 Town Board meeting, Leners subsequently reasserted and confirmed his unilateral authority over how meetings are run in the Town, including the annual meeting. Per the May 8, 2023 Town Board meeting minutes, Leners said, "He will determine what will go on the agenda because it is out of control. Public input is also not mandated, he will not allow any bitchfest just like the last two years at the Annual Meeting." Leners' latest statement could mean one or more restrictions will continue or will exist moving forward: (1) the non-resident speaking restriction will continue at future Town annual meetings; and/or (2) Leners will

33

restrict non-residents from also speaking at regular Town Board meetings during the public comment period.

134. This Public Comment Prohibition against non-residents prohibited and completely banned Schulte and other non-residents who use recreational vehicles on their property in the Town from engaging in public comment during the Town meeting and was designed to limit a viewpoint favorable to recreational vehicle use, which is disfavored by Leners.

135. Based on and due to the Public Comment Prohibition, Schulte was discouraged from attending the April 22, 2023 meeting, and as a result, chilled from speaking at the meeting due to the Public Comment Prohibition stated by Leners on April 10, 2023 that only residents can speak at the Town meeting.

136. The Public Comment Prohibition is not viewpoint neutral, not content neutral, and targets and bans those from speaking who reside outside the Town, but use their recreational vehicles on private lots they own in the Town on a seasonal basis. By shutting down and eliminating the ability of non-resident recreational vehicle users to engage in public comment in a public forum about proposed Town regulations impacting their use of recreational vehicles on property they own or use in the Town, the Public Comment Prohibition disproportionately and unlawfully targeted and restricted a viewpoint which wants to allow continued recreational vehicle use on private property, a viewpoint that Leners continues to disfavor, and one which Leners has unlawfully restricted based on his prior actions, as alleged and set forth above.

137. The Public Comment Prohibition against non-residents constitutes unlawful content and viewpoint discrimination and unlawfully restricts and/or chills the protected speech of Schulte and others under the First Amendment of the United States Constitution.

138.    "'Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles.'" Surita, 665 F.3d 860, 870 (7th Cir. 2011) (quoting United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 812 (2000). "Just as the government may not favor one speaker over another, neither may it disfavor one speaker over another" in a public forum. Surita, 665 F.3d at 870 (internal citations omitted). "Penalties for speech protected under the First Amendment are forbidden," and an "absolute prohibition" from allowing a disfavored individual from speaking during public comment in a public forum fails strict scrutiny and violates an individual's First Amendment rights. Surita, 665 F.3d at 871-72.

139.    A "complete ban on a speaker is essentially the broadest means available for achieving the government's purpose." Theyerl v. Manitowoc Cnty., 41 F.Supp. 3d 737, 745 (E.D. Wis. 2014). Defendants' policy completely banning non-residents from speaking during the public comment or public input session of any Town meetings is not narrowly tailored, nor is it necessary to achieve a compelling government interest.

140.    The First Amendment constitutional rights of Schulte and others relating to the public comment period were clearly established at the time of the unconstitutional actions regarding the new prohibition on public comments from non-residents at the Town meeting.

141.    At all times relevant, Defendants, particularly Chairman Leners, were or should have been aware that those actions were unconstitutional.

142.    Defendants' conduct towards Schulte and others recklessly and callously disregarded and was indifferent to Schulte and others' First Amendment rights.

143.    Chairman Leners is not subject to qualified immunity for the Public Comment Prohibition. See e.g., Surita, 665 F.3d at 872-74.

35

**COUNT IV**
**Public Comment Policy Violates First Amendment's Freedom of Speech and Right to Petition Protections (Municipal Liability under <u>Monell</u>)**
**42 U.S.C. § 1983**
**(Against Defendants Town of Cedar Lake and Town of Cedar Lake Board of Supervisors)**

144.    Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

145.    The Public Comment Prohibition constituted the Town's official policy, custom, practice, or decision.

146.    Leners' actions to propose and implement the Public Comment Prohibition were the moving force behind or were the cause of Schulte and others' constitutional injuries.

147.    Leners had final policy-making authority regarding the Public Comment Prohibition.

**COUNT V**
**Violation of First Amendment**
**Retaliation in Response to Exercise of First Amendment Freedom of Speech, Chilling of Speech**
**42 U.S.C. § 1983**
**(Against all Defendants, including Ken Leners in his official and individual capacities)**

148.    Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

149.    Leners' actions, as alleged above, and as affirmed and/or acquiesced to by the remaining Defendants constitutes unlawful retaliation for the expression of protected First Amendment speech.

150.    Such unlawful retaliation includes, but is not limited to, deleting or removing the comments to the Leners Post, keeping the comments to the Leners Post deleted, shutting down and closing a public forum on the Town Website which opposed Leners' proposed regulatory actions and his qualifications and leadership as the Chairman, Leners threatening legal action against

36

Schulte and others, Leners threatening to call the Sheriff during Town Board meetings, Leners' threats to file a countersuit while stating he wouldn't want to be in the Plaintiff's shoes, Leners' continued efforts to regulate recreational vehicle use in the Town, and limits on public comment.

151.     During an April 12, 2023 Barron County Zoning Committee meeting, Leners appeared and asked questions about the Town of Cedar Lake changing zoning in the Town, particularly the area where Schulte's property is located. Schulte's property, zoned Recreational-Residential, allows recreational vehicle use as a permitted use.

152.     Upon information and belief, at the Town Board on June 12, 2023, Chairman Leners informed the Board he was going to set up a meeting with the Barron County Zoning Administrator to discuss or examine further restrictions on land uses by changing the zoning in the same zoning district that Schulte's property has. The Chairman allegedly added this zoning item to the Board's agenda the day before their June 12 meeting.

153.     Upon information and belief, Leners' actions chilled, deterred, and continue to chill and deter Schulte and others from engaging in protected speech.

154.     Schulte, Young, and others' protected speech was the motivating factor in Leners' actions as set forth in this Amended Verified Complaint.

155.     Absent Schulte, Young, and others engaging in protected speech, Leners would not have taken the same actions to restrict, delete, or otherwise chill that protected speech.

**COUNT VI**
**Violation of First Amendment and Fourteenth Amendment**
**Freedom of Speech**
**42 U.S.C. § 1983**
**(Against Defendant Kenneth Leners in his individual and official capacity and all**
**remaining Defendants)**

156.     Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

157.    The First and Fourteenth Amendments to the Constitution prohibit restrictions on speech which fail to provide members of the public fair notice of prohibited conduct.

158.    A government action or policy is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

159.    Leners actions to restrict speech on the Town Website by first claiming comments were "disrespectful," and later claimed to be "derogatory," failed to provide sufficient information for Schulte and others to conform their conduct to the requirements of Leners' directives, and chilled Schulte and other members of the public from engaging in protected First Amendment speech on the Town Website.

160.    During a discussion of whether to set criteria for the Town Website's Comment Section on October 17, 2022, Chairman Leners called criteria "extremely subjective."

161.    Leners' "disrespectful" or "derogatory" criteria to regulate and prohibit speech invites, causes, and is used to facilitate viewpoint discrimination, is vague, and did not provide Schulte and others due process of law.

## COUNT VII
### Violation of First Amendment (Injunctive and Declaratory Relief)
### Freedom of Speech
### 42 U.S.C. § 1983
### (Against Defendant Kenneth Leners in his official capacity and all remaining Defendants)

162.    Plaintiff re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

163.    Defendants continue to perpetuate and enforce unlawful actions violating Schulte's First Amendment rights.

164.    Schulte is entitled to a declaration under 28 U.S.C. § 2201, or through other authority of this Court under applicable law, that Defendants' actions deleting or removing the

38

comments on the Leners Post on the Town Website, the limits on "disrespectful" or "derogatory" speech, restrictions on all comments on the Town Website in response to the Leners Post, the new placement of the previously removed comments in a disjointed manner, and restrictions on public comment as applied against non-residents, constitutes unlawful and unconstitutional viewpoint discrimination under the First Amendment and that such actions violated Schulte's due process rights under the Fourteenth Amendment.

165. Without declaratory and injunctive relief from this Court, Defendants' viewpoint discrimination and other constitutional violations against Schulte and others will continue and Schulte will continue to indefinitely suffer per se irreparable harm.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Elizabeth Schulte requests the following relief:

A. Enter a preliminary and permanent injunction enjoining Defendants from engaging in continued violations of Plaintiff's and others' First Amendment rights, including but not limited to restoring the deleted comments directly to the Leners Post, not some amorphous unrelated poorly formatted page; if the Town opens up the Town Website for public comment again, that Defendants are prohibited from restricting or otherwise deleting comments based on the comments being "disrespectful" and that the Defendants comply with other First Amendment rights protecting freedom of speech; and requiring that when public comment occur, it be available to all persons attending Town meetings or Town Board meetings, not just residents.

B. Declare that Defendants' actions toward Plaintiff and others violate their First Amendment and Fourteenth Amendment rights under the United States Constitution;

C.    Award Plaintiff nominal damages in the amount of $1. See Uzuegbunam v. Preczewski, 141 S. Ct. 792 (2021).

D.    Award Plaintiff compensatory damages;

E.    Award Plaintiff punitive damages against Leners in his individual capacity;

F.    Award Plaintiff attorney's fees under 42 U.S.C. § 1988;

G.    Award Plaintiff her costs; and

H.    Award any other relief as the Court deems appropriate.

Dated this 20th day of June, 2023.

WELD RILEY, S.C.


By:    __/s/ Anders B. Helquist_____
Anders B. Helquist
WI State Bar # 1070854
Weld Riley, S.C.
3624 Oakwood Hills Parkway
Eau Claire, WI 54701
715-839-7786
ahelquist@weldriley.com
*Counsel for Plaintiff, Elizabeth Schulte*

## DECLARATION UNDER PENALTY OF PERJURY

I, Elizabeth Schulte, a citizen of the United States and a resident of the State of Minnesota, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America as follows:

1. That I have read the foregoing Amended Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

2. Any allegations which are not subject to being stated with certainty were made upon information and belief.

3. I believe that allegations that I do not have personal knowledge of to be true based on specified information, documents, or both.

Executed this 20 day of June, 2023.

_Elizabeth Schulte_
Elizabeth Schulte
Plaintiff